UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SAMUEL HAWK            )     CIVIL ACTION NO. 1:18-cv-1768
          Plaintiff        )
                              )     (MUNLEY, D.J.)
      v.                  )
                              )     (ARBUCKLE, M.J.)
FEDERAL BUREAU OF PRISONS,   )
*et al.,*                             )
          Defendants

## REPORT & RECOMMENDATION

## I.     INTRODUCTION

Samuel Hawk ("Plaintiff"), a deaf individual and former federal inmate, filed an action in this Court, seeking relief for alleged violations of the Rehabilitation Act of 1973 ("Rehab Act"), the Religious Freedom Restoration Act ("RFRA"), and the First Amendment's Free Exercise Clause, claiming that Defendant Federal Bureau of Prisons ("Defendant BOP") did not accommodate his deafness while he was imprisoned. Currently before the Court is Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment. For the reasons explained below, I will recommend that Plaintiff's Amended Complaint be dismissed without leave to amend.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was admitted to FCI Schuykill in February 2015. (Doc. 16, ¶ 11). Plaintiff is a deaf individual who communicates primarily using American Sign

Language ("ASL"). *Id.* at ¶ 10. According to his Amended Complaint, during Plaintiff's incarceration at FCI Schuykill, Defendant BOP and certain prison officials failed to provide Plaintiff with accommodations, including qualified interpreters, appropriately trained prison staff, and effective auxiliary aids and services. *Id.* at ¶¶ 12-13. Defendants' conduct resulted in Plaintiff being:

- Unable to communicate effectively with health care providers and mental health professionals, raise medical issues, discuss mental health concerns, or understand the treatments and medications they prescribe;
- Excluded from participating in the same educational, vocational and rehabilitation classes and work programs as hearing prisoners;
- Deprived of knowledge or understanding of prison-wide safety and/or emergency announcements;
- Deprived of knowledge of prison meals, work assignments and other important daily prison activities;
- Unable to communicate effectively with correctional officers and prison staff;
- Unable to participate in Jewish religious services and events;
- Unable to communicate effectively with those outside of FCI Schuykill due to the lack of access to a videophone; and
- Subject to unsafe conditions due to correctional officers unawareness of his disability or failure to accommodate his disability in daily interactions with [Plaintiff] individually and in group settings.

*Id.* at ¶ 16.

Plaintiff alleges that Defendants' failures resulted in his depression, isolation, and stress, which further resulted in "a medical condition and related hospitalization." *Id.* at ¶ 15.

Plaintiff informed Defendant BOP of its failure to provide proper and effective communication through Defendant BOP's administrative remedy process and letters from Plaintiff's counsel. *Id.* at ¶ 17. Defendant BOP denied Plaintiff's administrative requests for auxiliary aids. *Id.*

On March 6, 2018, Plaintiff filed a complaint against Defendant BOP in the U.S. District Court for the District of Columbia. (Doc. 1). On June 28, 2018, Defendant BOP moved to dismiss Plaintiff's Complaint, in part, and requested the venue be transferred to the U.S. District Court for the Middle District of Pennsylvania. (Doc. 7). On July 30, 2018, the Court granted the motion to transfer venue and transferred the case to the Middle District of Pennsylvania. (Doc 10).

On September 26, 2018, in response to Defendant BOP's Motion to Dismiss, Plaintiff filed an Amended Complaint (Doc. 16). Plaintiff's Amended Complaint, asserts claims under the Rehab Act and the RFRA. Plaintiff alleges violations under the Rehab Act because Defendant BOP "fail[ed] to provide [him] adequate access to a qualified ASL interpreter, effective and consistent usage of non-aural notification of emergencies or other important events and announcements, and properly trained staff." (Doc. 16, ¶ 85). Plaintiff alleges violations under the RFRA because hearing inmates at FCI Schuylkill are able to attend and participate in religious services, but Defendants BOP and Unknown Prison Officials failed to provide Plaintiff with an interpreter "to ensure the same level of participation." *Id.*

at ¶ 94. Plaintiff also asserts a claim under *Bivens*, claiming that Unknown Prison Officials retaliated against Plaintiff for complaining to Defendant BOP that his rights had been violated. *Id.* at ¶¶ 2-3. For all of Plaintiff's claims, he seeks injunctive relief, declaratory relief, and compensatory damages. *Id.* at pp. 21-22.

On November 30, 2018, Defendant BOP filed a Motion to Dismiss and/or for Summary Judgment (Doc. 24). Defendant BOP filed a Brief in Support (Doc. 34) on March 1, 2019. Plaintiff filed a Brief in Opposition (Doc. 43) on May 17, 2019. On March 1, 2019, Defendant BOP filed a Statement of Facts (Doc. 33). On May 17, 2019, Plaintiff filed a Statement of Facts (Doc. 44).

## III.    MOTION FOR SUMMARY JUDGMENT

Plaintiff's Amended Complaint claim under the RFRA should survive a summary judgment motion because Plaintiff exhausted his administrative remedies before filing his Complaint in compliance with 42 U.S.C. § 1997e(a).

### A. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman*

*v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met this burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party

provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, *supra*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a

trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

B. Discussion of Plaintiff's RFRA Claim

The RFRA provides that the federal government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). This burden is permitted only if the government demonstrates that the burden "(1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." U.S.C. § 2000bb-1(b).

Under the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision requires an inmate to exhaust his administrative remedies prior to filing suit. *See Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006). Failure to exhaust is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Exhaustion is mandatory, and we may not consider unexhausted claims. *Id.* at 211. We cannot, however, dismiss an entire complaint for failure to exhaust if the complaint contains only some claims that have not been exhausted. *Id.* at 221.

We may not "excuse compliance" with the exhaustion requirement, "whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (internal quotation marks omitted). The PLRA also requires "proper exhaustion"—i.e., "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*,

548 U.S. 81, 91, 93 (2006). An inmate's failure to properly exhaust his administrative remedies results in the procedural default of the claim. *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).

The BOP has a multi-tier system of formal review:

> Before seeking formal review, an inmate must first attempt to resolve the matter informally by presenting his complaint to staff on an Informal Resolution Attempt form . . . If informal resolution is unsuccessful, the inmate may then seek relief from the warden with the submission of a Request for Administrative Remedy . . . If an inmate is dissatisfied with the warden's response, he [may] file a Regional Administrative Remedy Appeal . . . with the Regional Director. . . If the response of the Regional Director is not satisfactory to the inmate, he may then file a Central Office Administrative Remedy Appeal . . . with the BOP's General Counsel. . . An inmate's appeal to the Central Office is the final administrative level of appeal in the BOP. No administrative remedy appeal is considered to have been fully exhausted until it is decided on its merits by the BOP's Central Office.

(Doc. 38, ¶ 4) (internal citations omitted).

Plaintiff served a fifty-five (55) month sentence for conspiracy to commit mail and wire fraud. (Doc. 33, ¶ 1). Plaintiff was a federal inmate, in the custody of Defendant BOP, residing at FCI Schuykill. *Id.* at ¶¶ 2-3.

On July 1, 2016, Plaintiff initiated the Administrative Remedy Process by filing an Administrative Remedy Procedure for Inmates Informal Resolution Form. (Doc. 16, ¶ 60). In this form, Plaintiff listed as his complaint: "Prison's failure to accommodate my disability by providing a qualified interpreter and access to a videophone." *Id.* On July 29, 2016,

Plaintiff filed a Request for Administrative Remedy with the warden, requesting he be provided with an interpreter. *Id.* at ¶ 61.

In Plaintiff's request to the warden, Plaintiff stated:

> The prison has violated my civil rights by failing, since the time I arrived to make [its] programs, benefits, and services available to me by providing a qualified interpreter and access to a video phone. I request that a qualified interpreter be immediately provided and made available to me during all waking hours of each day to allow me to participate in medical appointments, psychological appointments, educational programs, town hall meetings, disciplinary interviews, and other activities within the prison camp. I further request access to a video phone for use in calls to my attorneys, my family, and others I am authorized to contact by phone under prison rules.

> The prison has suggested that it would make an interpreter available to me at an unspecified time in the future. Under applicable law, an interpreter and video phone should have been made available to me from the moment I arrived at the prison. Further, my attorneys were told months ago that an interpreter would be forthcoming, but we are still waiting[.] Thus, the current response is unacceptable.

(Doc. 33, ¶ 13).

On August 5, 2016, the warden provided the following response to Plaintiff's request for a qualified interpreter and access to a videophone:

> The institution has awarded a contract to a service which will be providing sign language interpreters. The individual sign language interpreters are in the process of obtaining necessary clearances to begin working on site. Once the interpreters begin working on site, the institution anticipates providing interpreting services as necessary for medical and psychology appointments, educational and religious programs, program review, town hall meetings, and disciplinary proceedings. Interpreting services will be available for these programs and activities when they can be scheduled with sufficient advance

notice. In addition you must otherwise be qualified to participate in the programs and activities.

(Doc. 16, ¶ 62).

Plaintiff timely appealed the warden's response to the Regional Director, arguing that the warden's proposed accommodations are inadequate and any accommodation should have been available when Plaintiff arrived at FCI Schuykill. *Id.* at ¶ 63. Plaintiff alleged: the prison will most likely not get an interpreter for him, it was not clear whether he would get an interpreter for all services and programs; and he did not know how much notice he must provide to request an interpreter. (Doc. 33, ¶ 15). On September 9, 2016, the Regional Director denied Plaintiff's appeal, concluding that the warden had adequately addressed Plaintiff's concerns. (Doc. 16, ¶ 64). On September 24, 2016, Plaintiff filed an appeal of the Regional Director's response to the Central Office. *Id.* at ¶ 65.

In his appeal to the Central Office, Plaintiff provided the following reasons for appeal:

> While the prison has engaged an interpreter, the interpreter is not qualified and has not been made reasonably available. I am required to request an interpreter fourteen days [(14)] in advance of an anticipated need. This does not enable me to use an interpreter during most appointments at the prison or for most prison activities, which are not generally scheduled that far in advance. Further, the interpreter is only available during exceedingly limited hours during each day and not on weekends making it even more difficult for me to use his services. Additionally, the prison's actions do not provide any remediation for

the significant amount of time I was forced to go without a qualified interpreter for no justifiable reason. Accordingly my concerns have not been addressed.

*Id.*

Defendant BOP was afforded the opportunity to review the issues, develop a factual record, and correct any errors. Plaintiff's administrative appeals focused on the prison's failure to accommodate Plaintiff's disability by providing a qualified interpreter and access to a videophone. Plaintiff alleges that because of the lack of accommodations, he was not provided the opportunity to participate in prison activities. Plaintiff consistently asked for accommodations of a qualified interpreter so that he could participate meaningfully in prison activities, including those which would allow Plaintiff to practice his Jewish faith. Plaintiff's allegations relating to his RFRA claim are integrally related and share the same factual basis as Plaintiff's exhausted grievance—that Plaintiff could not effectively take part in any rehabilitative, educational or religious programs without a qualified interpreter.

Defendant BOP argues, generally, that Plaintiff failed to put Defendant BOP on notice of the RFRA claim. Defendant BOP does not provide specific evidence or authority regarding any lack of notice. "Without such evidence, [the] court cannot determine as a matter of law that Plaintiff

failed to exhaust any claim under RFRA." *Pineda-Morales v. De Rosa*, 2005 WL 1607276, at *6 (D.N.J. July 6, 2005).

For that reason, it is recommended that Plaintiff's RFRA claim should survive summary judgment on the exhaustion issue only because Plaintiff exhausted his administrative remedies regarding the RFRA claim. We next turn to whether any claim can survive a motion to dismiss.

## IV.    MOTION TO DISMISS

Plaintiff's claims under the Rehab Act, First Amendment, and the RFRA should all be dismissed. Plaintiff's *Bivens* claim fails as a matter of law because there is no First Amendment retaliation action under *Bivens*. For the reasons explained below, Plaintiff's claims under the Rehab Act and the RFRA are moot.

### A. LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In review

of a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothchild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* The court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminister Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the Court of Appeals has observed:

The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Iqbal*. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. *Sands v.*

*McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physical attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also, U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 382, 388 (3d Cir. 2002)

B. Discussion of Sovereign Immunity and the Rehab Act

The Rehab Act[1] does not allow money damages as a remedy for Plaintiff's claim, but injunctive and declaratory relief is available against Defendant BOP.

Defendants argue that the Rehab Act claim against Defendant BOP is barred by the doctrine of sovereign immunity. While *Bivens* allows claims for damages against federal agents, it does not allow claims for damages to be brought against federal agencies, such as Defendant BOP, regardless of a waiver of sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). Actions against individuals in their official capacities are "in all respects

---

[1] The Rehabilitation Act of 1973, 29 U.S.C. § 794.

other than name" actions against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Sovereign immunity from suits for money damages has not been waived by the Rehab Act.

Section 504 of the Rehab Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section.

29 U.S.C. § 794(a).

Section 504 prohibits discrimination under two circumstances: by a nonfederal entity that receives financial assistance from a federal agency or by a federal agency that conducts its own program—for example, the Federal Bureau of Prisons. *Id.* The Bureau of Prisons conducts its own program, rather than providing or receiving financial assistance.

Although money damages are not available, Plaintiff may pursue equitable damages. The Administrative Procedure Act Provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States.

5 U.S.C. § 702.

Precedent in the Third Circuit and the Middle District of Pennsylvania suggests that the Rehab Act allows a prisoner to bring a claim for injunctive relief against an agency and individuals in their official capacities. The Court has explicitly stated that a prisoner may sue a regional director of a prison "in his official capacity for equitable relief" under the Rehab Act. *Howard v. Bureau of Prisons*, 2008 WL 318387, at *10 (M.D. Pa. Feb. 4, 2008). "With regard to the [Rehab Act] particularly, injunctive relief is available even though damages are not: the Court in *Lane v. Pena* did not directly address the propriety of injunctive relief . . . but the Court's discussion did not indicate that such relief was unavailable or that federal executive agencies could not be defendants in § 504(a) actions." *Id.* at *9.

Plaintiff conceded that his claims for money damages against Defendant BOP are prohibited under the doctrine of sovereign immunity. There is nothing, however, barring his claims for equitable or declaratory relief. As part of his demand for relief, Plaintiff requested that "[t]he Court adjudge and decree that the actions of Defendants . . . violated and continue to violate [Plaintiff's] rights under the [Rehab Act]." (Doc. 16, p. 21). Plaintiff also requested that the court order Defendants to provide Plaintiff with:

- Qualified ASL interpreters during [Plaintiff's] waking hours to enable [Plaintiff] to communicate effectively with medical healthcare professionals, institution staff, educational and vocational instructors, religious leaders, work program managers

and coordinators, and others especially during medical appointments, religious events, town hall meetings, disciplinary hearings and any interactions with staff involving alleged violations of prison rules or conduct;

- Effective and consistent usage of non-aural notification of emergencies or other important events and announcements, e.g. a vibrating pager, effective and utilized visual alarms and/or message boards;
- Effective training program to instruct prison employees on how to appropriately interact with and be sensitive to the needs of deaf individuals such as [Plaintiff];
- Access to Video Remote Interpreting (VRI) for usage when an interpreter cannot feasibly be brought in; and
- Equal and full access to appropriate and effective telecommunications devices for the deaf, such as full and equal acce3ss to a videophone.

*Id.* at 21-22.

Based on the above discussion, Plaintiff's claims for monetary relief against Defendant BOP should be dismissed, and Plaintiff's claims for equitable and declaratory relief should not be dismissed.

Regarding Plaintiff's claim for equitable and declaratory relief under the Rehab Act, there is an issue of mootness. Plaintiff has been released from Defendant BOP custody.[2]

It is well established that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). In other words, "[f]ederal courts are not

---

[2] Plaintiff was released from FCI Schuykill on November 29, 2018, but remained on parole. (Doc. 43, p. 12).

empowered to decide moot questions." *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam)). A prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief since he no longer is subject to the conditions he alleges are unconstitutional. *Abdul-Akbar v. Watson*, 3 F.3d 195, 206-207 (3d Cir. 1993); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) (holding "a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.").

There is an exception that would permit an otherwise moot claim to be heard. "The 'capable of repetition' doctrine is a narrow exception to the mootness principle and is limited to cases presenting two elements: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again.'" *Abdul-Akbar*, 4 F.3d at 206 (quoting *Weinstein v. Bradford*, 424 U.S. 147 (1975)).

Plaintiff fails to satisfy either of the requirements of the capable of repetition doctrine. First, inmates subject to the action at issue, violation of constitutional rights by the prison or prison officials, are incarcerated for a sufficiently lengthy time to fully litigate their challenges. Second, there is not a reasonable likelihood that Plaintiff will be subjected to the same action again because "[s]peculation that

O:\Arbuckle\drafts\18-1768 (Hawk v BOP)\R&R SJ and MTD.docx

[he] could return to prison does not overcome the mootness doctrine." *Abdul-Akbar*, 4 F.3d at 207 (holding "such conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power . . . Because the district court had no support or basis for its 'reasonable expectation' that Abdul-Akbar 'could' again be incarcerated at MSU, we cannot sustain the district court's speculative hypothesis.").

Because Plaintiff is no longer in BOP custody and cannot satisfy the requirements of the capable of repetition doctrine, his requests for injunctive and declaratory relief are moot.

## C. DISCUSSION OF PLAINTIFF'S RFRA CLAIM

For the same reasons as discussed for Plaintiff's claim under the Rehab Act, Plaintiff's claim under the RFRA should be dismissed as moot. Although Plaintiff can establish that he did exhaust his administrative remedies and may be able to make out a claim, his claim is moot. Plaintiff has been released from BOP custody. Furthermore, Plaintiff is unable to meet the requirements of the capable of repetition doctrine. Therefore, Plaintiff's RFRA Claim should be dismissed.

## D. DISCUSSION OF PLAINTIFF'S FIRST AMENDMENT CLAIM

Plaintiff faces a legal hurdle in pursuit of his First Amendment claim. There is no cause of action for First Amendment retaliation under *Bivens*. The court has noted:

O:\Arbuckle\drafts\18-1768 (Hawk v BOP)\R&R SJ and MTD.docx

[T]he United States Court of Appeals for the Third Circuit has signaled . . . that *Bivens* may not be extended to First Amendment retaliation claims in the prison context. In *Watlington on behalf of FCI Schuykill African Am. Inmates v. Reigel*, No. 16-3222, 2018 WL 501365, at *3 n.3 (3d Cir. Jan. 22, 2018), the court of appeals affirmed the dismissal of a First Amendment retaliation claim brought by a federal prisoner against correctional staff. In agreeing that dismissal of this claim was appropriate the appellate court observed, in part, that "[A] First Amendment retaliation claim . . . may not apply to a *Bivens* claim against a federal official. *See Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017) (holding that '*Bivens* does not afford a remedy against airport security screeners who allegedly retaliate against a traveler who exercises First Amendment rights') *see also Reichle v. Howards*, 566 U.S. 658, 663 n. 4, 132 S. Ct. 2088, 182 L.Ed.2d 985 (2012) (stating that '[w]e have never held that *Bivens* extends to First Amendment claims') *Id.* While the *Watlington* decision is not precedential, it is highly persuasive as a "paradigm of the legal analysis [this Court] should . . . follow.;" *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 n. 12 (3d Cir. 1996), and the court's express reliance upon *Vanderklok* and extension of *Vanderklok*'s holding to *Bivens* First Amendment retaliation claims in a federal correctional context is not something that we are free to ignore or discount.

*Randolph v. FCI Allenwood (Med)*, No. 1:17-CV-786, 2018 WL 2276246, at *10 (M.D. Pa. Apr. 24, 2018), *report and recommendation adopted*, No. 1:17-CV-786, 2018 WL 2263733 (M.D. Pa. May 17, 2018).

Plaintiff attempts to assert a claim for First Amendment retaliation against Unknown Prison Officials. There is not, however, a cause of action for First Amendment retaliation under *Bivens*.

Plaintiff's claim for First Amendment retaliation against Unknown Prison Officials fails as a matter of law and should be dismissed.

V.    SUMMARY

Plaintiff brought an action against Defendants BOP and Unknown Prison Officials. Plaintiff's first claim alleged discrimination under the Rehab Act against Defendant BOP. Plaintiff sought monetary, declaratory, and injunctive relief. The Rehab Act does not allow claims for monetary relief. Plaintiff's claims for declaratory and injunctive relief are moot, as Plaintiff has been released from Defendant BOP's custody.

Plaintiff's second claim alleged violation of the RFRA against Defendants BOP and Unknown Prison Officials. Although Plaintiff is successfully able to establish a claim, Plaintiff's claim under the RFRA is also moot.

Plaintiff's third claim was a *Bivens* action against Defendants Unknown Prison Officials. Plaintiff alleged a First Amendment retaliation claim against Defendants Unknown Prison Officials. This claim fails because First Amendment retaliation is not a cause of action under *Bivens*.

[The next page contains the recommendation.]

## VI. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that

(1)    The Motion to Dismiss be GRANTED in favor of Defendant BOP with respect to Count I – Discrimination on the Basis of a Disability in Violation of the Rehabilitation Act;

(2)    The Motion to Dismiss be GRANTED in favor of Defendant BOP and Defendants Unknown Prison Officials with respect to Count II – Violation of the Religious Freedom Restoration Act;

(3)    The Motion to Dismiss be GRANTED in favor of Defendants Unknown Prison Officials with respect to Count III – *Bivens* Action;

(4)    Plaintiff not be given leave to amend; and

(5)    The Clerk be directed to close the case.

Date: August 30, 2019

BY THE COURT
*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SAMUEL HAWK,              )     CIVIL ACTION NO. 3:18-cv-1768
          Plaintiff       )
                     )     (MUNLEY, D.J.)
     v.                 )
                     )     (ARBUCKLE, M.J.)
FEDERAL BUREAI OF PRISONS, )
*et al.*,                  )
          Defendants

<u>NOTICE OF RIGHT TO OBJECT</u>
<u>[LOCAL RULE 72.3]</u>

**Any party may object to a magistrate judge's proposed findings,** recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within fourteen (14) days** after being served with a copy thereof. Such party **shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections** which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. **The briefing requirements set forth in Local Rule 72.2 shall apply.** A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Date: August 30, 2019          BY THE COURT
                               *s/William I. Arbuckle*
                               William I. Arbuckle
                               U.S. Magistrate Judge